**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**CENTRAL DIVISION**
**LEXINGTON**


**CIVIL ACTION NO. 06-148-JBC**

**ROY LEE HAMMACK,**                                                                                          **PLAINTIFF,**

**V.**                                      **MEMORANDUM OPINION AND ORDER**

**JO ANNE BARNHART, COMMISSIONER,**
**SOCIAL SECURITY ADMINISTRATION,**                                              **DEFENDANT.**

**\* \* \* \* \* \* \* \* \* \***

This matter is before the court upon cross-motions for summary judgment on

the plaintiff's appeal of the Commissioner's denial of his application for

Supplemental Security Income (DE 10, 11).  The court, having reviewed the record

and being otherwise sufficiently advised, will deny the plaintiff's motion and grant

the defendant's motion.

**I. Overview of the Process**

Judicial review of the ALJ's decision to deny disability benefits is limited to

determining whether there is substantial evidence to support the denial decision and

whether the Secretary properly applied relevant legal standards.  *Brainard v. Sec'y*

*of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989) (citing *Richardson*

*v. Perales*, 402 U.S. 389 (1971)).  "Substantial evidence" is "more than a scintilla

of evidence, but less than a preponderance; it is such relevant evidence as a

reasonable mind might accept as adequate to support a conclusion."  *Cutlip v.*

*Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994).   The court

does not try the case *de novo* or resolve conflicts in the evidence; it also does not

decide questions of credibility.  *See id.*  Rather, the ALJ's decision must be affirmed

if it is supported by substantial evidence, even though the court might have decided

the case differently.  *See Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th

Cir. 1999).

The ALJ, in determining disability, conducts a five-step analysis.  At Step 1,

the ALJ considers whether the claimant is performing substantial gainful activity; at

Step 2, the ALJ determines whether one or more of the claimant's impairments are

"severe"; at Step 3, the ALJ analyzes whether the claimant's impairments, singly

or in combination, meet or equal a listing in the Listing of Impairments; at Step 4,

the ALJ determines whether the claimant can perform past relevant work; and,

finally, at Step 5 – the step at which the burden of proof shifts to the

Commissioner – the ALJ determines, once it is established that the claimant cannot

perform past relevant work, whether significant numbers of other jobs exist in the

national economy which the claimant can perform.  *See Preslar v. Sec'y of Health

& Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994); 20 C.F.R. § 404.1520.

**II. The ALJ's Determination**

The plaintiff is a forty-six-year-old male with a high-school equivalent

education and has past relevant work ("PRW") as a security guard and a

maintenance worker.  AR 19.  He alleges disability beginning on September 15,

2002, as a result of upper- and lower-back problems and skin problems on his

hands and feet.  *Id*.  The plaintiff filed a claim for Supplemental Security Income

("SSI") on August 8, 2003, which was denied initially and on reconsideration.  AR

18.  After a hearing held on August 15, 2005, Administrative Law Judge ("ALJ")

Roger L. Reynolds determined that the plaintiff did not suffer from a disability as

defined by the Social Security Act.  At Step 1, the ALJ determined that the plaintiff

had not engaged in substantial gainful activity.  At Step 2, the ALJ found that the

plaintiff's dyshydrotic eczema, chronic low back pain, pancreatitis, hepatitis C,

polysubstance abuse, depression, and personality disorder were severe

impairments.  The ALJ then determined that the plaintiff's impairments did not

meet or equal a listing in the Listing of Impairments at Step 3.  At Step 4, the ALJ

found that the plaintiff was unable to perform his PRW.  The ALJ concluded at Step

5, however, that the plaintiff could perform a significant number of other jobs in the

national economy at the light exertional level.  AR 25.

**III. Legal Analysis**

The plaintiff objects to the ALJ's determination that he could work at the

light exertional level on three grounds.  First, he argues that the ALJ erred in his

analysis of whether the plaintiff's impairments met a listing in the Listing of

Impairments.  Second, the plaintiff claims that the ALJ failed to consider all of the

evidence in the record in making his decision.  Third, the plaintiff claims that the

ALJ erred in his consideration of the plaintiff's credibility.

**A. The Listing of Impairments**

Under the Commissioner's regulations, if a disability claimant has an impairment which meets the duration requirement and is listed in Appendix 1 or is equal to a listed impairment, the Commissioner will find him disabled without considering his age, education, and work experience.  20 C.F.R. § 404.1520(d). To meet or equal the requirement of a listing, a claimant must have a medically determinable impairment that satisfies *all* of the criteria of a listing.  20 C.F.R. § 416.925(d) (emphasis added).  The plaintiff faults the ALJ for not finding that his low back disorder and chronic eczema did not meet or equal a listing in the Listing of Impairments.

To satisfy the criteria for the Listing of Impairments regarding spinal disorders, a claimant is required to present evidence of such a disorder "resulting in compromise of a nerve root . . . or the spinal cord.  With . . . evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss . . . accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test . . . ."  20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.04A.  The plaintiff relies heavily on an MRI taken on July 15, 2002,[1] which showed that the plaintiff had extruded soft discs at L3-L4 and L4-L5 which were in position to compromise the nerve root.  AR 350. On November 30, 2003, however, Dr. Jason Fleming performed a consultative physical examination on the plaintiff after which he concluded that "[t]here was no

_____

[1]Notably, this MRI pre-dated the day on which the plaintiff claims he became disabled.

4

evidence of obvious nerve root compression." AR 210. Dr. Fleming also found

that the plaintiff's straight leg raising was "questionably positive" and that he had

only "mild restrictions" in regard to his work-related functioning. AR 209, 210.

Finally, the plaintiff testified that he worked as a security guard until September of

2002. AR 66, 380-81; Plaintiff's Brief, at 3. Thus, during the time that the MRI

relied on by the plaintiff was performed, he was working as a security guard; he

even testified that he only left that job because of a problem with his eczema, not

his lower back condition. AR 381. The ALJ did not err in finding that the

plaintiff's lower back condition did not meet or equal a listing in the Listing of

Impairments.

The plaintiff also claims that his eczema meets or equals listings for Skin

Disorders under the Listing of Impairments. Pursuant to the Listing, "[c]hronic

infections of the skin . . . with extensive fungating or extensive ulcerating skin

lesions" or "[d]ermatitis . . . with extension skin lesions" may lead to an automatic

finding of disability. 20 C.F.R. Pt. 404, Subpt. P, App. 1, §§ 8.04, 8.05. When

assessing the severity of a skin disorder pursuant to the Listing, the Commissioner

bases her assessment on the extent of the claimant's skin lesions, the frequency of

flareups, how the claimant's symptoms limit him, and the extent of the claimant's

treatment and its effects on him. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 8.00C.

Skin lesions of the soles of both feet result in a serious limitation when they "very

seriously limit [a claimant's ability] to ambulate." *Id.* at § 8.00C(1)(c). The inability

to ambulate effectively means "an extreme limitation of the ability to walk." *Id.* at § 1.00(2)(b)(1).

The ALJ did not err in assessing the plaintiff's eczema pursuant to the Listing of Impairments. When Dr. Fleming examined the plaintiff in November of 2003, he concluded that the plaintiff had "significant evidence of eczema" but questioned "how much it affects him in regard to his work-related activities." AR 210. More importantly, Dr. Fleming also observed that the plaintiff "was able to perform heel and toe walking without difficulty . . . ." AR 210. The plaintiff testified that his eczema improved when he wore open-toed shoes and when he applied a medicinal cream to his feet; he also claimed that the problem caused by the eczema was not so much that it was painful but more that it was itchy and irritating. AR 371-380. Finally, the ALJ noted that the plaintiff reported to his treating physician, on the same day that he filed for disability benefits, that he had been recently working on a farm "hauling hay." AR 21, 237. While the plaintiff's eczema did cause him some discomfort, an abundance of evidence supports the ALJ's finding that this condition did not qualify him for a listing under the Listing of Impairments.

**B. The ALJ's Evaluation of the Medical Evidence**

The plaintiff alleges that the ALJ failed to consider much of the relevant medical evidence in the record. He particularly faults the ALJ for allegedly ignoring his July 2002 MRI and selectively citing the reports of his treating physician, Dr. Danny Corales. The court disagrees with the plaintiff for two reasons. First, an

ALJ need not discuss every piece of evidence in the record for his decision to

stand. *Thacker v. Comm'r of Soc. Sec.*, 99 Fed. Appx. 661, 665 (6th Cir. 2004).

The ALJ stated in his written opinion that he had reviewed "all of the evidence in

the record," AR 18, and the plaintiff has failed to present evidence to the contrary.

The court therefore refuses to find error in the ALJ's decision not to explicitly cite

the documents the plaintiff considers most favorable to his claim.  Second, much of

the evidence presented by the plaintiff, including his July 2002 MRI, was recorded

before September 15, 2002, the day the plaintiff claims he became disabled.  To

the extent that the ALJ chose to rely on evidence accumulated during the plaintiff's

claimed disability period over earlier records, this decision was appropriate.  The

ALJ's consideration of the evidence in the record was not erroneous.

### C. The ALJ's Credibility Finding

Since the ALJ has the opportunity to observe the plaintiff, his credibility

determinations are entitled to deference when they are supported by substantial

evidence in the record. *See Blacha v. Sec'y of Health and Human Servs.*, 927 F.2d

228, 230-31 (6th Cir. 1990).  An ALJ's credibility finding, however, must be

supported by substantial evidence. *King v. Heckler*, 742 F.2d 968, 975 (6th Cir.

1984); *see also Felisky v. Bowen*, 35 F.3d 1027, 1036 (6th Cir. 1994) ("If an ALJ

rejects a claimant's testimony as incredible, he must clearly state his reasons for

doing so.").

The ALJ is also required to consider all of a claimant's symptoms, including

7

pain, in determining whether he is disabled.  20 C.F.R. § 404.1529(a).  When

medical signs of an impairment are present, the ALJ must evaluate how the

intensity and persistence of the symptoms affect the claimant's ability to work.  20

C.F.R. § 404.1529(b), (c); *see also Felisky*, 35 F.3d at 1038-39 (6th Cir. 1994)

(citing *Duncan v. Sec'y of Health and Human Servs.*, 801 F.2d 847, 853 (6th Cir.

1986)).  In performing this inquiry, the ALJ must consider the objective medical

evidence, evidence of the claimant's daily activities, the frequency and intensity of

the claimant's pain, any precipitating or aggravating factors, any medications taken

to alleviate the pain, and any other measures taken to remedy the claimant's pain.

*See Felisky*, 35 F.3d at 1039-40.

The plaintiff claims that the ALJ failed to provide proper support for and

discussion of his conclusion that the plaintiff's testimony was incredible and that

the plaintiff "overstated the severity and frequency of his symptoms and

limitations."  AR 22-23.  However, the ALJ noted in his opinion that: (1) the

plaintiff claims he cannot afford to see a doctor yet smokes two packs of cigarettes

per day; (2) the plaintiff had a history of drug abuse, had been convicted of several

DUI offenses before he finally quit drinking alcohol, and had spent time in prison for

drug offenses; (3) the plaintiff was working on his father's farm at the same time

he filed his disability benefits application.  AR 20-22.  While the plaintiff is correct

that the ALJ did not state each of the factors impacting on the plaintiff's credibility

in the same paragraph in which he made his credibility finding, the ALJ commented

at length on all of these factors in his opinion.  Reversing the ALJ's decision simply because he failed to re-state later in his opinion what he had discussed earlier would needlessly place form over substance.  As the ALJ had sufficient reasons for doubting the plaintiff's credibility, and he clearly spelled out these reasons, his credibility determination was not erroneous.

**IV. Conclusion**

Accordingly,

**IT IS ORDERED** that the Commissioner's motion for summary judgment (DE 11) is **GRANTED**.

**IT IS FURTHER ORDERED** that the plaintiff's motion for summary judgment (DE 10) is **DENIED**.

Signed on February 12, 2007

*Jennifer B. Coffman*
JENNIFER B. COFFMAN, JUDGE
U.S. DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY

9